1

2

3

4

5

6                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
7

8   LOUIS ANTHONY LAGOIS, by and          NO.  C17-310-MJP-JPD
    through his legal guardian, MICHAEL
9   GROSS,

10                          Plaintiff,      REPORT AND
                                            RECOMMENDATION
11          v.

12  NANCY A. BERRYHILL, Acting
    Commissioner of Social Security,
13
                            Defendant.
14

15          Plaintiff Louis Anthony Lagois appeals the final decision of the Commissioner of the

16  Social Security Administration ("Commissioner") which denied his applications for Disability

17  Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33,

18  after multiple hearings before an administrative law judge ("ALJ").  For the reasons set forth

19  below, the Court recommends that the Commissioner's decision be REVERSED and

20  REMANDED for a finding of disability.

21                    I.      FACTS AND PROCEDURAL HISTORY

22          Plaintiff is currently a 76-year-old man with at least four years of college education.

23  Administrative Record ("AR") at 145, 295.  His past work experience includes employment as

24

an Assistant Electrical Engineer for a municipal utility. AR at 36, 175.[1] Plaintiff was last

gainfully employed in February 2005. AR at 290.

Plaintiff first applied for DIB benefits on August 17, 2005, alleging an onset date of

March 17, 2004. AR at 57, 145-49, 285, 1050. However, he was initially denied benefits on

February 2, 2006, and did not appeal that denial. AR at 72. Plaintiff reapplied for benefits on

January 21, 2007, and was denied again on March 27, 2007. AR at 81, 168-70. He appealed

for reconsideration, and was denied benefits at the reconsideration level on September 25,

2007. AR at 87, 1050.

Plaintiff requested an administrative hearing. Plaintiff's first full administrative

hearing was conducted in person on February 22, 2010, in Seattle, Washington. AR at 9-42,

56-57.[2] Plaintiff alleged disability as a result of sleep apnea, urinary incontinence, arthritis of

the knee, and degenerative disc disease. AR at 16-18, 24-25, 32-33, 57, 59-61. The ALJ

issued an unfavorable decision on May 21, 2010, finding that plaintiff was able to return to his

past relevant work as an electrical engineer "as actually performed." AR at 60, 63. AR at 54-

63. The Appeals Council denied plaintiff's request for review on July 2, 2011. AR at 1-3.

Plaintiff appealed to the district court. AR at 1043-45. On August 8, 2012, the

Honorable Brian A. Tsuchida reversed and remanded the case for further administrative

proceedings. Specifically, Judge Tsuchida noted the parties' agreement that the ALJ had

constructively reopened plaintiff's prior claim for benefits, as the ALJ had adjudicated the

---

[1] As discussed below, his job title was characterized differently by vocational experts
during his administrative hearings.
[2] Plaintiff's hearing was initially conducted via videoconference with an ALJ in
Houston Bissonnet, Texas, on October 2, 2009. AR at 43-50. However, the ALJ in that case
rescheduled plaintiff's hearing for a later date because plaintiff had not yet had an opportunity
to review the medical evidence in his file. Plaintiff testified that he had to appear *pro se*
because attorneys he contacted declined to represent him on a contingent fee basis because "the
difference in the amount that would be available to them was not worth their time. So, they
would not represent me based on that." AR at 46.

entire period at issue (March 17, 2004 through June 30, 2007). In addition, Judge Tsuchida affirmed the ALJ's adverse credibility assessment, but found that the ALJ erred by finding that plaintiff could perform his past relevant work as actually performed, because this conclusion was inconsistent with the testimony of the vocational expert ("VE") and the evidence that plaintiff had been required to lift up to fifty (50) pounds at his job and travel to different field locations. AR at 1155. Judge Tsuchida also noted that the ALJ failed to address whether plaintiff's functionary limitations stemming from his urinary needs would have impeded his ability to perform his past job during the time period at issue. AR at 1155-56. The Court directed the ALJ to reassess whether plaintiff could perform his past relevant work at step four, and if necessary, proceed to step five. AR at 1153-61.

Plaintiff's second full administrative hearing was held on October 16, 2013. AR at 1116-1145.[3] During the hearing, the VE testified that plaintiff had "transferable skills" from his former work as an electrical engineer, and therefore he could perform an office position called a computer-aided ("CAD") drafter. AR at 1128-31, 1136. The VE further testified that plaintiff's skills could transfer to the specific jobs of electrical drafter and electronic drafter. AR at 1141.

The ALJ issued an unfavorable decision on November 29, 2013. AR at 1047-60.[4] Despite the fact that the Court (and the parties) had previously determined that plaintiff's prior claim had been constructively reopened, the ALJ wrote that "upon reviewing the evidence in

---

[3] The ALJ acknowledged the nature of the error pointed out by the district court, *i.e.*, that no rationale had been given for the prior ALJ's conclusion that plaintiff was able to perform his past relevant work. AR at 1120. The ALJ also agreed that there had been a "constructive reopening" of the prior claim filed in August 2005. AR at 1121-22.

[4] The Court notes that the ALJ's decision erroneously states that the case was before him "on stipulated remand" from Civil Case No. C11-1465-JCC-BAT. Although the commissioner had conceded error by the ALJ, no such stipulation had been entered by the parties. AR at 1050.

the current file, I do not find good cause to reopen the prior claim. As such, although the claimant alleges an onset date of disability of March 17, 2004, the period at issue begins on February 4, 2006, the day after the date of the prior determination." AR at 1050. Thus, the ALJ considered the relevant period to be February 4, 2006 through his date last insured of June 30, 2007. AR at 1052. The ALJ then found that plaintiff had a sedentary RFC, and therefore could not return to his prior work as an "engineer technician." AR at 1058. However, the ALJ found that plaintiff could perform other sedentary work existing in significant numbers in the national economy such as the jobs of drafter, electrical drafter, and electronics drafter. AR at 1059. Plaintiff appealed again to the district court. AR at 1384-86.

Judge Tsuchida issued a second Report and Recommendation again reversing and remanding for further proceedings, noting the parties' agreement that the ALJ had erred by concluding there was no good cause to reopen the August 2004 claim because this issue had already been resolved on appeal to the district court. AR at 1393.[5] The parties also agreed that the ALJ had erred in considering medical opinion evidence regarding the severity of plaintiff's sleep apnea and its impact on plaintiff's ability to work during the relevant time period. AR at 1395. Judge Tsuchida found that a remand for further proceedings, rather than an award of benefits, was appropriate because the record was not yet fully developed. AR at 1395. Specifically, Judge Tsuchida noted that "the record does not establish how long [plaintiff] required the two nap per day accommodation," as plaintiff had received three surgeries which improved his condition. AR at 1395. As "the VE only testified regarding Mr. Lagois's employability if he took two 20 –minute naps each work day" and not whether he would be employable if he needed naps only when he was "excessively sleepy," the Court remanded for

---

[5] The Appeals Council also found that the ALJ had failed to comply with the district court's earlier order. AR at 1405-07.

REPORT AND RECOMMENDATION - 4

further development of the record regarding "when Mr. Lagios went from requiring two naps per day to requiring naps only when excessively sleepy." AR at 1395. The Honorable Marsha J. Pechman adopted the Report and Recommendation, and directed the ALJ to fashion a complete RFC finding and "reassess steps four and five with the assistance of a vocational expert, ensuring that the vocational expert is provided a hypothetical that is consistent with the RFC ultimately found." AR at 1389-90.[6]

A third administrative hearing was conducted in this case on April 5, 2016. AR at 1292, 1315-1343. Plaintiff testified that during his past work an electrical project engineer, he would lift fifty pounds and climb down into a vault in the field on a regular basis. AR at 1324-25. The VE testified that his past work was best described as project engineer, under DOT code 019.167-014, a skilled occupation with a SVP of 8, classified in the light category. AR at 1328. The ALJ asked the VE to look for sedentary jobs plaintiff could perform with plaintiff's transferable skills. AR at 1330. The VE testified that following his formal transferrable skills analysis, he could not find a sedentary position that plaintiff could perform with directly transferrable skills. AR at 1332, 1335-37.[7]

---

[6] Similarly, the ALJ was further directed by the Appeals Council to obtain evidence from a VE and pose hypothetical questions "that reflect the specific capacity/limitations established by the record as a whole." AR at 1406.

[7] The VE initially stated that plaintiff could perform the job of compensation manager under DOT code 186.167-022, a sedentary position with an SVP of 8. AR at 1331. However, the VE subsequently explained that "a person with a project engineer background would . . . based on my experience, not have the skills to simply step into that job and do it. That would require quite a bit of HR work and some other things that would not be inherent in a project engineer occupation." AR at 1331. The VE asserted that "based on my review of that particular title, it comes up technically speaking, but was in the practical matter is not truly transferable as a direct minimal vocational adjustment of occupations." AR at 1332. The VE testified that it would take between three to six months for someone with plaintiff's background to get up to speed and be able to perform a new sedentary drafting job adequately. AR at 1340-41.

On November 2, 2016, the ALJ again denied plaintiff's claim for benefits. AR at 1289-1306. The ALJ found that plaintiff's severe impairments from his alleged onset date of March 17, 2004 through his date last insured of June 30, 2007, included urinary incontinence, sleep disorder (obstructive sleep apnea), arthritis of the right knee, and degenerative disc disease of the lumbar spine. AR at 1295.[8] At step four, the ALJ found that plaintiff could perform his past relevant work as a project engineer (DOT # 019.167-014, light, SVP 8), as it was customary performed in the national economy. AR at 1305.[9] The ALJ stated that plaintiff could not perform his past job as it was actually performed, because he had to lift and carry as much as 50 pounds and therefore it was not "light" from an exertional standpoint. AR at 1305. The ALJ did not proceed to step five. AR at 1305.

On April 5, 2017, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 6.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by

---

[8] The ALJ noted plaintiff's allegations that he could not work because of insomnia, uncontrolled incontinence, bladder spasms, daytime sleepiness, spinal osteoarthritis, and back pain, and reported reduced memory and concentration due to his sleep disorder and a need to be close to the bathroom. AR at 1297.

[9] The ALJ acknowledged that the VE at the February 2010 hearing testified that plaintiff's past work was best characterized as that of an electrical engineer (DOT # 003.061-010), and the vocational expert at the October 2013 hearing testified that his past work was best characterized as an engineering technician (DOT # 003.161-014). However, the ALJ stated that even if he were to adopt either of these jobs, it would not alter the outcome because the RFC would fall within the exertional/nonexertional demands of both jobs. AR at 1305 fn. 2.

substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.    EVALUATING DISABILITY

As the claimant, Mr. Lagois bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in

any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[10] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d),

_____

[10] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On November 2, 2016, the ALJ issued a decision finding the following:

1.   The claimant last met the insured status requirements of the Social Security Act on June 30, 2007.

2.   The claimant did not engaged in substantial gainful activity during the period from his alleged onset date of March 17, 2004, through the date last insured of June 30, 2007.

3.   From his alleged onset date of March 17, 200 through his date last insured of June 30, 2007, the claimant had the following severe impairments: urinary incontinence, sleep disorder (obstructive sleep apnea), arthritis of the right knee, and degenerative disc disease of the lumbar spine.

4.   From his alleged onset date of March 17, 2004, through his date last insured of June 30, 2007, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity

of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.      After careful consideration of the entire record, I find that, from his alleged onset date of March 17, 2004 through his date last insured of June 30, 2007, the claimant had the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 6 hours in an 8-hour workday, and sit for 6 hours in an 8-hour workday. The claimant could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant could never climb ladders, ropes, and scaffolds. The claimant needed to avoid concentrated exposure to vibrations and hazards (i.e., moving machinery and unprotected heights).

6.      Through the date last insured of June 30, 2007, the claimant was capable of performing past relevant work as a project engineer (DOT 019.167-014, light, SVP 8), as it was customarily performed. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.      The claimant was not under a disability, as defined in the Social Security Act, at any time from March 17, 2004, the alleged onset date, through June 30, 2007, the date last insured.

AR at 1295-1305.

VI.      ISSUES ON APPEAL

The principal issues on appeal are:

1.      Did the ALJ err at step four by mischaracterizing plaintiff's past work as a project engineer instead of a composite job?

2.      Did the ALJ err in assessing plaintiff's RFC by failing to incorporate limitations from plaintiff's severe impairments?

3.      Did the ALJ fail to follow the law of the case by posing a hypothetical question to the VE containing plaintiff's RFC finding, as ordered by the district court and Appeals Council?

Dkt. 17 at 1; Dkt. 21 at 4.

VII.    DISCUSSION

A.    <u>The ALJ Erred at Step Four, and the Error Was Not Harmless</u>

1.    *Legal Standards*

At step four, the plaintiff has the burden of showing that he or she is no longer able to perform past relevant work. *Lewis v. Barnhart,* 281 F.3d 1081, 1083 (9th Cir. 2002) (citing *Pinto v. Massanari,* 249 F.3d 840, 844 (9th Cir. 2001)).  The step-four determination involves a comparison between the demands of the claimant's former work and his or her present capacity.  *Villa v. Heckler,* 797 F.2d 794, 798 (9th Cir. 1986).  A claimant cannot merely show that he or she cannot perform the particular job he once performed; the claimant must prove that he or she cannot return to the same *type* of work.  *Id.*

A person is not disabled if they are able to perform his or her past work. 20 C.F.R. § 404.1502(f).  Social Security Ruling ("SSR") 82–61 describes the tests for determining whether a claimant retains the capacity to perform his or her past relevant work ("PRW").  *See* SSR 82–61, 1982 WL 31387, at *1–2 (Jan. 1, 1982).  One test provides that "where the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of a particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'"  *Id.*  Another test is "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job as ordinarily required by employers throughout the national economy."  SSR 82–61, 1982 WL 31387, at *2.  If this test is testified, then the claimant should be found not disabled.  *Id.*

The DOT is the "best source for how a job is generally performed." *Pinto,* 249 F.3d at 845.  In classifying prior work, the Commissioner must keep in mind that every occupation involves various tasks that may require differing levels of physical exertion.  It is error for the ALJ to classify an occupation "according to the least demanding function." *Valenica v.*

*Heckler,* 751 F.2d 1082, 1086 (9th Cir. 1985). DOT descriptions "can be relied upon—for jobs that are listed in the DOT—to define the job as it is *usually* performed in the national economy." SSR 82–61, 1982 WL 31387, at *2 (emphasis in original). Thus, "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id.*

As a general proposition, a claimant's properly completed vocational report may be sufficient to furnish adequate information about his or her past work. *Id.* However, when significant variation exists between a claimant's description of past work and the DOT description of the job, the claimant may have performed a composite job. *Id.* According to the internal Social Security guideline, the POMS, "composite jobs have significant elements of two or more occupations and as such, have no counterpart in the DOT." POMS DI § 25005.020(B).[11] The POMS provides that "the claimant's PRW may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant." *Id.*[12] Because "a composite job does not have a DOT counterpart," it should not be evaluated as part of step four considering work "as generally performed in the national economy." *Id.* Composite jobs are evaluated "according to the particular facts of each individual case." *Id.*

---

[11] POMS DI § 25005.020(B) ("Past Relevant Work (PRW) as the Claimant Performed It"), available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020, last visited 10/24/2017.

[12] According to the Supreme Court, "the rulings, interpretations and opinion of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1994). Although the Court was discussing a different agency, the opinions of the Social Security Administration in the POMS equally can provide guidance to the Court. *See Id.*

2.     *The ALJ Erred at Step Four by Classifying Plaintiff's Past Relevant Work According to its Least Demanding Function*

For the reasons discussed below, the Court agrees with plaintiff's contention that the ALJ committed harmful error by failing to evaluate whether plaintiff's past relevant work ("PRW") was actually a composite job, and instead classifying his PRW according to its least demanding function. The Commissioner's briefing in this case is sparse, at best, totaling only three pages of actual legal analysis. Dkt. 21 at 4-6.[13] The Commissioner contends that the ALJ did not err by finding that plaintiff could perform his past relevant work as a project engineer as it was generally performed since it was consistent with his residual functional capacity, and "the ultimate conclusion *rested on transferable skills* and the ability to perform the job as generally performed." *Id.* (emphasis added). The Commissioner further argues that "plaintiff's past relevant work is not a 'composite' job, but rather there were differences between how he actually performed it and how it was generally performed. It is irrelevant how Plaintiff actually performed the job since the ALJ found Plaintiff could perform his past job as it was generally performed." *Id.* at 6 (citing AR at 1305). The Commissioner asserts that "the Dictionary of Occupational Titles designates project engineer as light from an exertional standpoint and it does not require either postural changes or hazardous job duties." *Id.* (citing AR at 1305).

As a threshold matter, the Commissioner's statement that "the ultimate conclusion *rested on transferable skills*" is erroneous, as the ALJ did not make a step five findings in this case. During the final administrative hearing, the VE testified that plaintiff's past work was

_____

[13] Part of the Commissioner's discussion even appears to be suggesting that plaintiff may have transferable skills stemming from his use of the AutoCAD computer program, before acknowledging that "on remand, with the assistance of a new vocational expert, the ALJ determined that these similar jobs were no longer suitable transition occupations for plaintiff." *Id.* at 5 (citing AR at 1328-40).

best characterized as project engineer, DOT # 019.167-014, a skilled occupation with a SVP of 8, classified in the light category. AR at 1328. The ALJ then asked the VE to look for sedentary jobs plaintiff could perform with plaintiff's transferable skills. AR at 1330. The VE testified that following his formal transferrable skills analysis, he could not find a sedentary position that plaintiff could perform with directly transferrable skills. AR at 1332, 1335-37. Indeed, the ALJ did not identify any transferable skills to appropriate work, or even reach step five of the sequential evaluation process. AR at 1305. The ALJ relied upon the VE's testimony to conclude that plaintiff's past relevant work was that of a project engineer as it is "customarily performed," and concluded his analysis at step four. AR at 1305. As a result, the ALJ's conclusion in no way "rested on transferable skills" as alleged by the Commissioner.

Although the DOT is generally the best source for determining how past relevant work is performed, as noted above, the Ninth Circuit has held that it is error for the ALJ to classify an occupation "according to the least demanding function." *Valenica,* 751 F.2d at 1086. Here, by classifying plaintiff's PRW as a project engineer, which is a "light" occupation that indicates that plaintiff would have "no" exposure to electric shock or other hazards, the ALJ appears to have done exactly that. *See* DOT # 019.167-014 (Project Engineer), 1991 WL 646453. As noted above, "composite jobs have significant elements of two or more occupations and as such, have no counterpart in the DOT." POMS DI § 25005.020(B).[14] According to the POMS, "the claimant's PRW may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant." *Id.* In this case, the Court cannot agree with the Commissioner assertion that "it is irrelevant how Plaintiff actually performed the job," because the details of plaintiff's job duties suggest that

---

[14] POMS DI § 25005.020(B) ("Past Relevant Work (PRW) as the Claimant Performed It"), available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020, last visited 10/24/2017.

plaintiff actually performed a composite job rather than the DOT occupation of "project engineer" as found by the ALJ.

Seattle City Light characterized plaintiff's job as an Assistant Electrical Engineer. AR at 327-378. Plaintiff testified throughout this case that his job duties involved lifting at least 50 pounds several times per week, and regularly going out in the field to inspect job sites, including climbing down into a vault. AR at 1112, 1324-25. Similarly, the City of Seattle's description of the "Work Environment/Physical Demands" of the job of Assistant Electrical Engineer provides that "[m]ost work is performed in a normal City work/office environment. Field assignments exposure to all types of weather, traffic, hazardous/toxic substances, high voltage equipment and work in or near construction sites." AR at 328. The vocational expert at one of plaintiff's prior hearings reviewed the City's description of plaintiff's duties, and testified that plaintiff's past work involved "field assignments where they would be exposed to weather, traffic, hazards, toxic substances, high-voltage equipment, and working in or near construction sites. They would be required to stand, walk, or – (sic) for extended periods of time, and may be required to work at odd hours." AR at 1128, 1468. In plaintiff's written description of his duties, plaintiff wrote that he "utilized computer software to impellent changes to engineering construction drawings" and "travelled (sic) to local and remote (often by car) locations to document and inspect equipment, wiring and cable equipment installation." AR at 362.

During the most recent administrative hearing, the VE stated that he had relied "in particular" on exhibit 17E, which was plaintiff's handwritten work background statement (AR at 362) describing his job duties, but the VE did not discuss (and apparently did not analyze) the City of Seattle's detailed job description of plaintiff's work environment and physical demands. AR at 1327-29. The VE classified plaintiff's PRW in a way that essentially ignored

the field work plaintiff performed around hazards such as traffic and high voltage equipment such as electrical cables, as well as the fact that he was required to regularly lift fifty pounds. AR at 1305. As noted above, the job of "Project Engineer" in the DOT is a light occupation that does not require either postural changes or any exposure to risk of electric shock or other hazards. *See* DOT # 019.167-014 (Project Engineer), 1991 WL 646453. This description is impossible to square with the other evidence of record regarding plaintiff's work as an Assistant Electrical Engineer, which involved working in the field around traffic and significant electrical hazards. AR at 328, 362, 1468. By failing to consider the most challenging and hazardous part of plaintiff's job duties, the ALJ classified plaintiff's PRW according to its least demanding function, contrary to Ninth Circuit law. *See Valenica,* 751 F.2d at 1086 ("Every occupation consists of a myriad of tasks, each involving different degrees of physical exertion. To classify an applicant's 'past relevant work' according to the least demanding function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act.").

This apparent conflict between the evidence of record regarding plaintiff's actual job duties and the DOT occupation adopted by the ALJ, coupled with the fact that *three different VEs* during three different administrative hearings could not agree on exactly what occupation in the DOT best described plaintiff's PRW, strongly suggests to the Court that plaintiff actually performed a composite job with no direct parallel in the DOT. In 2010 the VE testified that plaintiff's PRW was an electrical engineering job; in 2013 the VE characterized his PRW as an engineering technician job (which requires exposure to electrical shocks up to 1/3 of the day); and the VE in 2016 characterized his PRW as a project engineer job (which involves "no" exposure to hazards such as exposure to electrical shocks). AR at 35-36, 1058, 1328. This

1  case has been remanded for further administrative proceedings several times with specific

2  instructions to further develop the record at steps four and five, but to no avail.

3  The Ninth Circuit has "recognized that harmless error principles apply in the Social

4  Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (*citing Stout v.*

5  *Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting

6  cases)). The Ninth Circuit noted that "in each case we look at the record as a whole to

7  determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth

8  Circuit has "adhered to the general principle that an ALJ's error is harmless where it is

9  'inconsequential to the ultimate non-disability determination.' " *Id.* (*quoting Carmickle v.*

10  *Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted).

11  Here, the ALJ concluded that plaintiff was not disabled pursuant to the Social Security

12  Act because he found that he was capable of performing past relevant work as a project

13  engineer "as it was customarily performed." AR at 1305. As discussed above, however, it

14  appears that plaintiff's past relevant work as an Assistant Electrical Engineer for the City of

15  Seattle was most likely a composite of two or more separate occupations in the DOT, because

16  the DOT occupation of "project engineer" does not adequately capture plaintiff's lifting

17  requirements or his regular work in the field around hazards. AR at 327-28. While the ALJ is

18  permitted to consider the "skills [plaintiff] gained from a skilled or semiskilled composite job

19  to adjust to other work" at Step 5, he is not permitted to evaluate the composite job at step four

20  "as generally performed in the national economy." *See* POMS DI § 25005.020(B), available at

21  https://secure.ssa.gov/poms.nsf/lnx/0425005020, last visited 05/31/2017.

22  Accordingly, the ALJ erred by finding that plaintiff has past relevant work as generally

23  performed, and the ALJ's finding is not based on substantial evidence in the record as a whole.

24

1  AR at 1305.  As this finding was the ALJ's basis for the ultimate finding regarding non-

2  disability, the error is not harmless.

3       B.     <u>An Award of Benefits is the Appropriate Remedy</u>

4       The Court has discretion to remand for further proceedings or to award benefits.  *See*

5  *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  However, a remand for an immediate

6  award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances.'"  *Brown-*

7  *Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec.*

8  *Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).

9       Before remanding a case for a finding of disability, three requirements must be met.

10  First, the ALJ must have "'failed to provide legally sufficient reasons for rejecting evidence,

11  whether claimant testimony or medical opinion.'"  *Id*. (quoting *Garrison v. Colvin*, 759 F.3d

12  995, 1020 (9th Cir. 2014)).  Second, the Court must conclude "'the record has been fully

13  developed and further administrative proceedings would serve no useful purpose.'"  *Id*.  In so

14  doing, the Court considers the existence of "'outstanding issues'" that must be resolved before

15  a disability determination can be made.  *Id*. (quoting *Treichler*, 775 F.3d at 1105).  Third, the

16  Court must conclude that, "'if the improperly discredited evidence were credited as true, the

17  ALJ would be required to find the claimant disabled on remand.'"  *Id*. at 495 (quoting

18  *Garrison*, 759 F.3d at 1021).  *See also Treichler*, 775 F.3d 1101 ("Third, if we conclude that

19  no outstanding issues remain and further proceedings would not be useful, we . . . [find] the

20  relevant testimony credible as a matter of law, and then determine whether the record, taken as

21  a whole, leaves "'not the slightest uncertainty as to the outcome of [the] proceeding[.]'")

22  (citations omitted).

23       Finally, even with satisfaction of the three requirements, the Court retains

24  "'flexibility'" in determining the proper remedy.  *Brown-Hunter*, 806 F.3d at 495 (quoting

*Garrison*, 759 F.3d at 1021). The Court may remand for further proceedings "'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Id.* As stated by the Ninth Circuit:

> The touchstone for an award of benefits is the existence of a disability, not the agency's legal error. To condition an award of benefits only on the existence of legal error by the ALJ would in many cases make "disability benefits . . . available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."

*Id.* at 495 (quoted sources omitted). *Accord Strauss v. Comm'r of Social Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011) ("A claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.") If the record is "uncertain and ambiguous," the matter is properly remanded for further proceedings. *Treichler*, 775 F.3d at 1105.

As discussed above, the Court has determined that the ALJ once again erred at step four of the sequential evaluation process, this time by mischaracterizing plaintiff's past relevant work.[15] The Commissioner does not offer any meaningful argument as to why this case should be remanded for yet another administrative hearing, such as identifying any outstanding issues that would make further proceedings useful. Instead, the Commissioner asserts in a conclusory fashion that "should the Court overturn the agency's decision, the proper remedy is a remand for further administrative proceedings." Dkt. 21 at 7. As this is the Commissioner's only argument, it is not clear what further factual development is (or even could be) necessary regarding opinion evidence and testimony. This is not a valid basis to remand this case for for further proceedings, and require plaintiff to endure a fourth administrative hearing and several more years of delay before he can receive disability benefits.

In the absence of any persuasive argument as to that factor, the Court finds that a fourth

---

[15] In light of this finding, it is unnecessary for the Court to address plaintiff's remaining assignments of error. Dkt. 17 at 14-18.

administrative hearing would not serve a useful purpose. Plaintiff's benefits application was filed in August 2005, over twelve years ago. Errors persist in the ALJ's decision despite three rounds of administrative proceedings. Because the ALJ's step four finding was once again in error, and the ALJ made no alternative step five finding (and indeed, the VE testified that plaintiff has no skills that are transferrable to other jobs without significant vocational adjustment), this matter should be remanded for a finding of disability. As the Ninth Circuit has recognized, "[a]llowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for a finding of disability. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **November 21, 2017**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 24, 2017**.

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

//

//

assigned District Judge acts on this Report and Recommendation.

DATED this 31st day of October, 2017.

JAMES P. DONOHUE
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 21